**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE KORDIE, et al., | : | |
| | : | Case No. 2:21-cv-03791 |
| Plaintiffs, | : | |
| | : | Judge Sarah D. Morrison |
| v. | : | |
| | : | Magistrate Judge Chelsea M. Vascura |
| OHIO LIVING, et al. | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION

### I.   INTRODUCTION

The subject of Plaintiffs' 34-page Emergency Motion ("Motion") is a one-page letter from Defendant Ohio Living's Chief Human Resources Officer to Defendants' healthcare employees. The letter contains a brief, factual description of the events and allegations that are the basis of this lawsuit. No reasonable reading of the letter could conclude that it is in anyway misleading or an attempt to persuade or coerce Ohio Living's employees not to join this lawsuit. Now, Plaintiffs' counsel is asking this Court to impose a gag order and other unnecessary measures for such grievous acts as Ohio Living referring to its employees as "part of the Ohio Living team" and accurately identifying Named Plaintiff Nicole Kordie as a "former employee." (Pl. Motion pp. 4–5). Plaintiffs' Motion is gratuitous, unsupported by legal authority, and is a waste of Defendants' and this Court's resources. Accordingly, Defendants respectfully request that the Court deny all relief requested in Plaintiffs' Emergency Motion.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

Defendants do not dispute many of the dates and facts described in Section I of Plaintiffs' Motion except for the Motion's deliberate mischaracterization of the letter sent to Ohio Living

1

employees on March 17, 2022 (the "Letter"). As described in greater detail herein, this Letter was provided to Ohio Living employees in a good-faith effort to avoid any confusion with respect to this lawsuit. Defendants desired only to explain the Ohio Living's actions and position with respect to the allegations in the Complaint and to inform employees that they would soon be receiving the Notice to Potential Opt-In Plaintiffs. Since the sending of this Letter, over 150 current and former employees from Ohio Living's twelve facilities have opted into this lawsuit.

### III. LAW AND ARGUMENT

#### A. Legal Standard

A defendant's ability to communicate with potential members to a collective or class action is protected under the First Amendment. *Lewis v. Huntington Nat'l Bank*, 2011 U.S. Dist. LEXIS 156175 at *9 (S.D. Ohio Oct. 24, 2011) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). Accordingly, a court must base any order limiting communications between parties and potential class members on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties." *Id.* at *10. Additionally, any limitations on a party's ability to communicate with potential class members must "limit[] speech as little as possible." *Gulf Oil*, 452 U.S. at 102. Only communications that are misleading, coercive, or an improper attempt to undermine a class warrant court intervention. *Jackson v. Papa John's USA, Inc.*, 2009 U.S. Dist. LEXIS 23325 at *5 (N.D. Ohio Mar. 10, 2009). The moving party bears the burden of proving that the communication was coercive, misleading, or improper.

Given the specific standard and heightened burden on the moving party to curb an employer's right to communicate with its employees in this context, courts authorize restrictions and corrective actions only for the most egregious conduct. The type of practices that have

2

warranted a corrective notice or other remedial or punitive measures are "communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *Lewis*, 2011 U.S. Dist. LEXIS 156175 at *13–14 (quoting *Cox Nuclear Med. v. Gold Cup Coffee Servs.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003)). The *Lewis* court provides several instructive examples of such conduct, such as posting signs opposing the lawsuit in the workplace, firing a primary supporter of the lawsuit, threatening supporters of the lawsuit with termination, telling seasonal employees that they would not be rehired if they joined the lawsuit, and telling potential class members that the plaintiffs' attorneys may attempt to steal the plaintiffs' identity. *Id.* at *15–16.

In *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003), a case Plaintiffs' Motion relies upon heavily, the court authorized an injunction and sanctions against the defendant for improper communications to putative class members. *Belt*, 299 F. Supp. at 670. There, the parties had a substantial conflict regarding the form of class notice even before the court notice had been sent to putative class members. Defendant EmCare strenuously objected to plaintiff's counsel having "unrestricted access to potential class members." *Id.* at 666. Because of this conflict, the court "crafted a form of notice incorporating proposals and suggestions from both Plaintiff and Defendants" after hearing arguments on the issue. *Id.* Despite this court-devised resolution that offered defendants the opportunity to have input on the notice, EmCare unilaterally sent a letter to potential class members that (1) suggested the lawsuit "was an attack on the potential plaintiffs' status as professionals," (2) misrepresented the amount of available damages, (3) incorrectly characterized the effect of attorneys' fees on plaintiffs' damages, and (4) suggested that the action could impact class members' employment status. *Id.* at 668. The

court found that EmCare "could have no purpose but to discourage absent class members from joining the suit when it misrepresented damages available and preyed upon the absent class members' fears and concerns," *Id.* at 669. Accordingly, the court found that an injunction and sanctions were justified.

On the other hand, courts have concluded that a limit on future communications was not justified in response to such conduct as: an employer issuing a "self-serving but not misleading" questionnaire and survey about the lawsuit that resulted in 82 of 83 surveyed employees stating they did not want join the lawsuit (*In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 494 (S.D. Cal. 2008)); defendant's counsel calling potential plaintiffs, misleading them about the nature of the lawsuit, and obtaining declarations from some of them (*Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 U.S. Dist. LEXIS 28615, at *12–13 (N.D. Cal. Nov. 17, 2005)); and an employer emailing potential class members to claim that plaintiff's counsel only wanted employees to join the lawsuit so he could earn more attorneys' fees (*Agerbrink v. Model Serv. LLC*, 2015 U.S. Dist. LEXIS 145563 at *14 (S.D. N.Y. Oct. 27, 2015)). Based on this precedent, it is clear that courts should not impose any restrictions on communication unless the conduct in question is egregious and an unmistakable effort to discourage participation in a lawsuit.

### B. Ohio Living's Letter Was Not Misleading, Coercive, or Improper.

Plaintiffs' Motion provides a litany of reasons Plaintiffs' counsel believes that the Letter was improper, all of which are unconvincing and some of which are frankly laughable. (Pl. Motion pp. 9–10). Notably absent from this list is any actual evidence of the Letter misleading any of the potential plaintiffs or coercing them not to join the lawsuit. To the contrary, at the time of the filing of this Opposition, over 150 individuals have already opted in to this lawsuit, with more than two weeks remaining in the opt-in period. This fact alone is ample evidence that the

opt-in Plaintiffs understood how to opt in to this lawsuit and did not feel coerced to refrain from opting in. No amount of pearl clutching or table pounding by Plaintiffs' counsel can change the conspicuous fact that the Letter did nothing to dissuade its recipients from opting into this lawsuit.

Notably, Plaintiffs' description of Defendants' alleged indiscretions is littered with vague qualifiers such as "pressured subtext," "implied contention," and "implied . . . connotation" that attempt to contort the contents of the Letter and apply malicious intent where none is present. (Pl. Motion p. 9). Such projection is a clear indication that Plaintiffs' counsel understands the weakness and flaws that pervade the arguments presented in this Motion, yet has decided to proceed with it nonetheless. However, the applicable case law on this issue is clear that any prohibition on communication is an extreme measure and is entirely unwarranted in this case.

      i.    **Ohio Living's Letter Was Not Misleading.**

Plaintiffs' Motion attempts to attach a devious intent to several factual statements contained in Ohio Living's Letter where no such interpretation is reasonable. First, the Motion asks this Court to find wrongdoing in Ohio Living's use of the word "team" to address its employees. Such an argument is farcical and shows the obvious weakness that runs throughout Plaintiffs' Motion. Ohio Living—and nearly all employers—regularly use the word "team" or some variation thereof to address employees as a means to encourage solidarity and collaboration among employees. In fact, the use of this term in the Letter only further reflects that Ohio Living—fully aware that the recipients of the Letter could join a lawsuit against them—considers them part of a team and appreciates their work regardless of their status as potential plaintiffs. In the same vein, Plaintiffs' Motion bemoans the Letter's description of

Named Plaintiff as a "former employee" when, in fact, she is. While digging for some nefarious motive, Plaintiffs' counsel appears to have only unearthed verifiable facts.

Similarly, Plaintiffs' Motion attempts to distort the omission of certain information from the Letter as somehow misleading. Specifically, the Motion points to the omission of the deductions claim, the statute of limitations, the participation of other opt-in plaintiffs, and the availability of damages as evidence that Defendants attempted to mislead the recipients of the Letter. Here, Defendants had no affirmative duty to notify Ohio Living employees of any of this information, particularly because Defendants knew that all of this information was contained in the Court-approved Notice that potential class members would receive. Indeed, had Defendants *included* information such as the statute of limitations or attorneys' fees, Plaintiffs' counsel certainly would have objected to such inclusions with equal consternation. Thus, the omission of certain facts that Defendants knew would be provided in the Court-approved Notice is not evidence that the Letter was misleading. *See*, *e.g.*, *Valencia v. Armada Skilled Home Care of N.M., LLC*, 2020 U.S. Dist. LEXIS 144538 (D. N.M. Jul. 23, 2020) (concluding that defendant's incorrect characterization of attorneys' fees and court costs did not make the communication misleading).

Finally, Plaintiffs' Motion also repeatedly mentions the Letter's statement that employees would receive a notice from Plaintiffs' counsel (rather than the third party administrator hired by Plaintiffs' counsel) as evidence of wrongdoing. This characterization of the Notice was a harmless, inadvertent error based on the facts that (1) Plaintiffs' counsel drafted and endorsed this Notice, and (2) the Notice includes instructions and contact information directing potential class members to Plaintiffs' counsel. Additionally, it is unclear how such a minor misstatement in any way misleads potential class members or affects their desire or ability to opt in to the

lawsuit, particularly when the Notice provides specific instructions about opting in. Defendants need only point to the number of current and former employees who have already opted in to this lawsuit as proof that their Letter did not somehow create confusion about this lawsuit or the opt-in procedures.

> ii. **Ohio Living's Letter Was Not Coercive.**

Plaintiffs' Motion also appears to allege that the Letter was coercive because the Letter stated Ohio Living would *not* retaliate against its employees if they decided to join the lawsuit. Surely, it is difficult to fathom the outrage by Plaintiffs' counsel if Ohio Living had omitted this anti-retaliation statement.

Nonetheless, the case law cited in Plaintiffs' Motion is unconvincing and easily distinguishable from the facts of this case. The Motion cites *Denson v. Great Lakes Cheese Co.*, 2007 U.S. Dist. LEXIS 108657 (N.D. Ohio Jul. 24, 2007) to support its illogical position that an employer's inclusion of an anti-retaliation statement is evidence of the employer's intent to retaliate against employees. In *Denson*, the defendant employer issued a letter to its employees that was framed as a "Notice of Lawsuit" in contravention of the court-approved notice that was to be issued to potential plaintiffs. *Id.* at *7. Ohio Living's Letter does no such thing; indeed, the Letter in this case draws attention to the fact that its employees should expect to receive the formal Notice of the lawsuit. Moreover, despite the *Denson* court's contention that it had "concerns" about the defendant's notice to employees, it ultimately found that the notice did not "cross the line" and decided not to issue the plaintiffs' corrective notice or grant other relief requested by the plaintiffs. *Id.* at *7–8.

Indeed, courts have found that even an employer's communication that *failed* to state an anti-retaliation position was nonetheless appropriate. *Valencia*, 2020 U.S. Dist. LEXIS 144538 at

7

*20. Similarly, courts have found that an employee's affidavit or other bare allegations that they feared retaliation were insufficient to find an employer's communication coercive. *Talamantes v. PPG Indus.*, 2014 U.S. Dist. LEXIS 116990 at *16 (N.D. Cal. Aug. 21, 2014); *Ross v. Southwest La. Hosp. Ass'n*, 2013 U.S. Dist. LEXIS 61000 at *13–14 (Apr. 26, 2013); *Nogueda v. Granite Masters*, 2010 U.S. Dist. LEXIS 37657 at *11 (N.D. Ind., Apr. 14, 2010). Like these cases, Plaintiffs have provided no evidence that Defendants have retaliated against any opt-in Plaintiffs or intend to retaliate against them. As a result, Ohio Living's Letter is not coercive and no relief to Plaintiffs is merited.

      iii.    **Ohio Living's Letter Does Not Improperly Attempt to Undermine this Lawsuit.**

Plaintiffs' Motion attacks statements in the Letter intended to reflect Defendants' position on the merits of this lawsuit. As with Plaintiffs' other arguments, this argument fails to demonstrate how Defendants' statements were in any way improper. Indeed, courts regularly permit such "self-serving advocacy" about a defendant's position. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 871 (S.D. Ohio May 23, 2011). Defendants' position about this lawsuit is that any violations of the FLSA were inadvertent and were corrected immediately upon discovery. Plaintiffs' counsel appears to feel entitled to restrict Defendants' from simply stating their position on the allegations, which is entirely inappropriate.

Similarly, the Motion attempts to depict the Letter's statement that "there is no action you are required to take" as an attempt to trick potential plaintiffs into not joining the lawsuit. To the contrary—such an argument only further reflects Plaintiffs' counsel's sense of entitlement to have Defendants' employees as their clients. Here again, Plaintiffs' Motion attempts to misconstrue the Letter's words and apply the most malicious intent to what is otherwise a simple and factual statement. The purpose of this statement was to reassure employees that they are not

required to do anything in response to Ohio Living's Letter, not the Notice of a lawsuit. Even assuming this statement referred to the Notice, it is still factually accurate—Defendants' employees are not *required* to opt into the lawsuit if they choose not to. As with the other statements in the Letter, Defendants wrote this statement knowing that the Notice would contain specific instructions about how to opt-in to the lawsuit if the potential plaintiffs chose to do so. Clearly, the current number of opt-in Plaintiffs demonstrates that these individuals understood that action was necessary to opt in to this lawsuit.

As noted above, Plaintiffs' Motion relies heavily—almost exclusively—on one case from the Eastern District of Texas to support its argument that Defendants' Letter was improper based on its timing. However, as described above, *Belt* is easily distinguishable from the facts of this case. In *Belt*, the defendants repeatedly objected to what they viewed as plaintiffs' counsel "hav[ing] unrestricted access to the potential class members." *Belt*, 299 F. Supp. 2d at 666. Accordingly, the defendants opposed the plaintiffs' Motion to Approve Form of Notice, objected to the court-approved notice to plaintiffs, and further objected to a website created by the named plaintiff about the lawsuit. *Id.* The defendants also requested to "be responsible for sending the notice and to have their contact information included in the notice," which the court denied. *Id.* After hearing and arguments on the form and contents of the notice, the court rejected proposed notices from both parties but conceded to many of the defendants' demands and ordered the parties to submit a jointly agreed notice. *Id.* Despite this extensive process to issue a notice to potential plaintiffs *approved by both parties*, the defendants "unilaterally mailed their own letter to the absent class members just before the Court's sanctioned notice was to be sent." *Id.* Thus, the defendant's actions were a deliberate attempt to circumvent the court's management of that case, even after the defendant ratified the contents of the notice. The court cited the timing of the

9

letter as *one factor* among several improprieties committed by the defendants in finding that defendants' notice to employees was misleading, coercive, and improper. *Id.* at 668–669.

None of the factors described in *Belt* are present in this case. Here, Defendants did not object to Plaintiffs' proposed notice to potential plaintiffs, which was approved by the Court without any input from Defendants. Likewise, Defendants did not propose to issue their own notice to employees; suggest that the lawsuit could affect the potential class members' employment; or mischaracterize the lawsuit as an attack on the class members' status as professionals, as the defendants did in *Belt*. Based on these facts, any comparison to the facts in *Belt* are misplaced and unconvincing.

In short, Plaintiffs' Motion is based entirely on conjecture and unsupported by any actual evidence that Ohio Living's Letter to its employees is in any way misleading, coercive, or improper. For these reasons, Defendants request that the Court deny Plaintiffs' request for a corrective notice and all other relief requested in the Motion.

      **iv.    A Single Declaration From One Ohio Living Employee Does Not Support Plaintiffs' Requested Relief.**

Attached to Plaintiffs' Motion is a single declaration from an Ohio Living Swan Creek employee and opt-in Plaintiff, Heather Hobson. Ms. Hobson's declaration provides no additional support for Plaintiffs' requested relief and merely reflects her own misinterpretation of the Notice of this lawsuit, and not Ohio Living's Letter.

Ms. Hobson's Declaration merely echoes the same points raised in Plaintiffs' Motion, in some places using identical language to the Motion to mischaracterize Ohio Living's Letter. The content of the Declaration is entirely subjective—it is not based on any tangible evidence that the Letter was misleading, coercive, or improper. Rather, the Declaration only states Ms. Hobson's worries, feelings, and beliefs about the purpose of the Letter, which are unsupported by a

10

reasonable reading of the Letter. Importantly, all of Ms. Hobson's stated "beliefs" about the Notice of Unpaid Overtime Wage Lawsuit reflect a blatant misinterpretation about the plain language of both the Letter and the Notice.[1]

Notably, Ms. Hobson opted in to this lawsuit three days after receiving the Notice and the same day she provided this declaration, providing further evidence that she was not as confused as she states about the nature of this lawsuit or the opt-in process. In short, Plaintiffs' requested relief should not be granted based on a single Declaration that contains only subjective and speculative statements concerning one employee's misinterpretation of both Ohio Living's Letter and the Notice of this lawsuit. *See Snide v. Disc. Drug Mart, Inc.*, 2011 U.S. Dist. LEXIS 133736 at *28 (N.D. Ohio Oct. 7, 2011) ("This Court will not presume that Drug Mart's communication with employees was coercive based solely on a single Affidavit.").

      **C.    Plaintiffs' Assertions About Dinsmore & Shohl's "Pattern of Behavior" Are Baseless and Offensive.**

Seemingly unsatisfied with the merits of this Motion, Plaintiffs' counsel further attempts to cast aspersions on the quality of Defendants' counsel's advice to its clients. Taking such a position in this Motion is unjustified, offensive, and arguably unprofessional.

The Motion points to three cases where Dinsmore represented the defendants—*Funk v. Airstream, Inc.*, *Satterly v. Airstream, Inc.*, and *Richert v. LaBelle Homehealth Care Services LLC*—to support its assertion that the firm has engaged in a "pattern of behavior" worthy of reprimand. Such a conclusion is unwarranted for several reasons. First, both *Airstream* cases

---

[1] For example, Paragraph 17 states that Ms. Hobson believed the Notice came from Ohio Living's legal department, despite the Notice containing no such statement, and despite the Letter coming from Ohio Living's HR department. Paragraphs 18 through 23 contain additional statements of Ms. Hobson's supposed "beliefs" about the Notice, even though neither the Notice nor the Letter contained any such information.

11

involved different counsel than those representing Defendants in this case.[2] Plaintiffs' Motion selectively attaches one of several communications between Airstream and its employees regarding the lawsuit, without acknowledging that there were additional allegations of retaliation and statements by defendants' management that the lawsuit was a "scam." *Funk v. Airstream, Inc.*, 2018 U.S. Dist. LEXIS 82666 at *5 (S.D. Ohio May 16, 2018). Despite these allegations, and despite Plaintiffs' Motion's averring that the *Airstream* motion resulted in a corrective notice and a restriction against further communications, the *Funk* court *denied* the plaintiffs' emergency motion, stating "the Court finds no justification at this time for restricting Airstream's communications with putative class members." *Id.* at *9. In the *Satterly* case, the court issued a temporary order prohibiting Airstream from discussing one specific payroll issue because the parties had agreed to mediation. The court later overruled Plaintiffs' emergency motion related to Airstream's communications with its employees. *Satterly v. Airstream, Inc.*, Case No. 3:19-cv-00032, Doc. #128 (S.D. Ohio Mar. 13, 2020).

The *Richert* case cited in the Motion involved alleged statements by one of the defendant's employees to multiple other employees directly discouraging participation in the lawsuit. *Richert v. Labelle HomeHealth Care Services, LLC*, Case No. 2:16-cv-00437, Doc. #56 (S.D. Ohio Dec. 1, 2017). The conduct alleged in *Richert*, if it occurred, was an obvious and egregious attempt to coerce potential plaintiffs not to opt in to the lawsuit—the defendant's employee allegedly directed potential class members to throw away the consent form and not return it and stated that they would lose their jobs if they opted in. Additionally, there was absolutely no allegation that counsel was involved or consulted regarding the alleged communications. There, defendant's counsel agreed that a corrective notice was appropriate

---

[2] Both Airstream cases cited in Plaintiffs' Motion centered around the same set of facts and involved the same counsel for both parties. Attorneys Jan Hensel and Zachary Weber did not represent Airstream in either case.

12

under the circumstances. Ultimately, Dinsmore withdrew as counsel for the defendants in the *Richert* case.

Beyond these obvious differences from the facts of this case, Dinsmore & Shohl is a firm with four offices and over 300 attorneys in Ohio alone. It is preposterous to allege that conduct that occurred several years ago involving two clients establishes a "pattern of behavior." Any relief sought on such grounds should be summarily denied.

**D.     Defendants Are Not Engaging in Improper Settlement Proceedings.**

The Motion's allegation that Defendants are engaging in improper settlement discussions is equally nonsensical as its other allegations. An employer's offer to reimburse unpaid wages is permitted under the FLSA and does not constitute a settlement offer. *Lewis*, 789 F. Supp. 2d at 871. Ohio Living's Letter makes no mention of settlement, a release of claims, an agreement with employees, or any other terms that could reasonably be interpreted as an offer to settle this matter. Defendants do not dispute that settlements under the FLSA require court approval.

**IV.     CONCLUSION**

Based on the facts and arguments presented above, Plaintiffs are not entitled to any corrective notice, reopening/extending the opt-in period, a protective order, attorneys' fees, declarations, or any other relief. Should the Court determine that any relief is appropriate, Defendants request the opportunity to provide substantive input on any communications directed to Plaintiffs or potential Plaintiffs in this matter.

Dated: April 29, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Jan E. Hensel*
　　　　　　　　　　　　　　　　　　　　**DINSMORE & SHOHL LLP**
　　　　　　　　　　　　　　　　　　　　Jan E. Hensel (40785)
　　　　　　　　　　　　　　　　　　　　191 W. Nationwide Blvd., Suite 300
　　　　　　　　　　　　　　　　　　　　Columbus, OH 43215
　　　　　　　　　　　　　　　　　　　　PH: 614-628-6880
　　　　　　　　　　　　　　　　　　　　FX: 614-628-6890
　　　　　　　　　　　　　　　　　　　　Email: jan.hensel@dinsmore.com

　　　　　　　　　　　　　　　　　　　　Zachary J. Weber (97997)
　　　　　　　　　　　　　　　　　　　　255 E. Fifth St, Suite 1900
　　　　　　　　　　　　　　　　　　　　Cincinnati, OH 45202
　　　　　　　　　　　　　　　　　　　　PH: 513-977-8200
　　　　　　　　　　　　　　　　　　　　FX: 513-977-8141
　　　　　　　　　　　　　　　　　　　　E-mail: zachary.weber@dinsmore.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants Ohio Living and*
　　　　　　　　　　　　　　　　　　　　*Ohio Living Communities*

## CERTIFICATE OF SERVICE

　　　　I certify a correct copy of this Answer was served by CM/ECF on this 29th day of April, 2022, on all counsel or parties of record:

Matthew J.P. Coffman (85586)
Adam C. Gedling (85256)
Kelsie N. Hendren (100041)
**COFFMAN LEGAL, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio  43220
Email:  mcoffman@mcoffmanlegal.com
　　　　agedling@mcoffmanlegal.com
　　　　khendren@mcoffmanlegal.com

*Counsel for Plaintiff and the putative class*

　　　　　　　　　　　　　　　　　　　　*/s/ Zachary J. Weber*
　　　　　　　　　　　　　　　　　　　　Zachary J. Weber