UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NICOLE KORDIE, on behalf of herself
and others similarly situated, *et al.*, : CASE NO.: 21cv-3791

    *Plaintiffs*, : JUDGE SARAH MORRISON

v. : MAGISTRATE JUDGE
    CHELSEY VASCURA

OHIO LIVING, *et al.*,
:
    *Defendants*.

**OPINION & ORDER**

Plaintiff Nicole Kordie's "Emergency Motion for a Corrective Notice, Reopening/Extending the Opt-In Period, and Immediate Protective Order, Attorneys' Fees Relating to this Motion, and Immediate Production of Declaration(s) and Communications" (ECF No. 31) brings this matter to the Court's attention. Defendants Ohio Living and Ohio Living Communities (collectively "Ohio Living") oppose the motion (ECF No. 37), and Ms. Kordie has replied (ECF No. 40). For the reasons that follow, the Motion is **GRANTED** in part and **DENIED** in part. (ECF No. 31.)

    **I.**    **BACKGROUND**

This is an unpaid overtime suit under the Fair Labor Standards Act, 29 U.S.C. § § 201, *et seq.*, as amended ("FLSA"), and related Ohio wage and hour laws. (ECF No. 1.) The Court's March 2, 2022 Order conditionally certified the following classes under 29 U.S.C. § 216(b):

- Overtime Collective

   All current and former hourly healthcare employees who worked at least forty (40) hours in any workweek and (1) received additional renumeration; or (2) had deductions applied in workweeks during the three (3) years preceding the filing of this Motion and continuing through the final disposition of this case.

- Minimum Wage Collective

   All current and former hourly healthcare employees who had deductions applied to their pay during the three (3) years preceding the filing of the Complaint and continuing through the final disposition of this case.

(ECF No. 28.) The Order established a forty-five day response deadline and authorized Notice and Consent to Join Forms to be sent to the putative class members via e-mail and regular mail. *Id.* The Consent Form stated the signatory agrees to be a party plaintiff in the collective action and to be represented by Coffman Legal, LLC.

Ms. Kordie's motion takes issue with a letter Ohio Living sent its current employees after the Order but before the Notice and Consent to Join Forms were distributed to putative class members. (ECF No. 31, PageID 384.) The letter, which appears on Ohio Living's letterhead, provides:

Dear Fellow Ohio Living Employee,

Thank you for being a part of our team and for continuing to provide exceptional care and support to our residents – your hard work during these challenging times is appreciated beyond words! As we recover from the numerous COVID related challenges, I want to share a wage and hour issue which we have identified and quickly corrected.

A former employee filed a complaint alleging that Ohio Living violated the Fair Labor Standards Act by alleging that we may not have included non-discretionary bonuses in an employee's regular rate of pay when calculating overtime.

2

> In the process of reviewing this allegation we have discovered that some pay may not have been included in the overtime calculation. As soon as this issue was discovered, it was fixed within our payroll system immediately. However, I want to make you aware that we are now in the process of looking back and making necessary corrections and monetary repayments to affected employees.
>
> If you are receiving this letter, you will soon receive a "Notice of Unpaid Overtime Wage Lawsuit" from Coffman Legal LLC, the attorneys for the former employee who filed the complaint. We are required by law to turn over your name to the law firm representing this former employee. Please know, there is no action you are required to take. However, we wanted to let you know about this lawsuit and upcoming notice before you hear about it from Plaintiff's counsel and advise you that any payroll errors that occurred were entirely unintentional and, in fact, escaped detection in our own internal payroll auditing procedures. Under no circumstances has Ohio Living ever intentionally underpaid any employee, and as soon as our calculations are finalized, any underpaid overtime due will be provided to you. If you choose to "opt-in" to the lawsuit, Ohio Living will not retaliate against you.
>
> If you have any questions about this letter, or about the Notice you will receive from Plaintiff's counsel, please feel free to contact me. Again, thank you for being part of the Ohio Living team!
>
> Sincerely,
>
> [s/Dana Ullom-Vucelich]
>
> Dana Ullom-Vucelich
> Chief Human Resources Officer

(ECF No. 31-2, PageID 424.)

Ms. Kordie argues the letter is "coercive, misleading, and improper" and serves to suppress employee participation in the collective. (ECF No. 31, PageID 387.) In support, she offers the declaration of Heather Hobson, a nurse presently employed by Ohio Living. (ECF No. 31-3, ¶ 1.) Ms. Hobson averred that the letter's statement that Ohio Living would not retaliate against her if she joined the

3

collective "worried" her that Ohio Living would do so. *Id.* at ¶ 11. She testified the letter "seemed to indicate that while there may have been an issue with unpaid overtime in the past, Ohio Living was going to pay me any unpaid overtime due and that I do not need to take any action with regard to the 'Notice of Unpaid Overtime Wage Lawsuit' I would soon receive." *Id.* at ¶ 13. While she averred that the letter made her feel that Ohio Living did not want her to participate in the lawsuit, she still joined the collective. *Id.* at ¶ 15 and ECF No. 32-1, PageID 486.

      Ms. Kordie argues the letter warrants a multitude of remedies. First, she wants a corrective notice issued specifying the Court did not authorize the letter, directing putative members to contact Coffman Legal, not Ohio Living, with questions regarding this lawsuit, and stating that any payments Ohio Living makes to employees will not prevent the employees from joining this suit. (ECF No. 31-5, PageID 435.) Second, she wants the opt-in period extended[1] for an additional forty-five days from the date the Corrective Notice is issued. (ECF No. 31, PageID 403.) Third, she wants an "immediate protective order" that "prohibits defendants and their counsel from communicating with putative collective members in any manner related to this lawsuit or their alleged 'payroll error' until the end of trial." *Id.* at 407. Fourth, she wants Ohio Living to pay her attorney's fees associated with the motion. *Id.* Lastly, she wants the Court to order Ohio Living to execute declarations "detailing the follow-up communications held with any employees" regarding the letter. *Id.* at 409.

---

[1] The opt-in period expired May 16, 2022. (ECF No. 31, PageID 403.)

Ohio Living counters the letter contains a "brief, factual description of the events and allegations that are the basis of this lawsuit" and was sent "in a good-faith effort to avoid any confusion with respect to this lawsuit." (ECF No. 37, PageID 623-24.) Ohio Living points to the more than 150 employees who have already opted-in to the collective as evidence that the letter is not coercive. *Id.* at 626.

## II. ANALYSIS

### A. Protective Order & Corrective Notice

While the Court has broad authority to govern counsel and parties in § 216(b) collective actions, its discretion is not unbridled. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989). Ms. Kordie's gag-order request seeks to curtail Ohio Living's First Amendment right to correspond with potential collective members, a right that is not lost simply because collective certification has been granted and notice has been issued. *See Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-1175 MHP, 2005 U.S. Dist. LEXIS 28615, at *10 (N.D. Cal. Nov. 17, 2005) ("[C]ommunications to potential class members by both parties are generally permitted, and also considered to constitute constitutionally protected speech."). Prior restraints on defendants' communications and judicial actions remedying their effect must be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981).

Communications to potential collective members are commercial speech which "enjoys a lesser degree of protection than other constitutionally guaranteed expression." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). Thus, courts can restrict such speech when "it is or has the potential to be misleading or coercive," *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 U.S. Dist. LEXIS 108085, at *13 (N.D. Ohio Dec. 2, 2008) (citation omitted), or is "an improper attempt to undermine the class action by encouraging class members not to participate in the suit . . . ." *Crosby v. Stage Stores*, Inc., 377 F. Supp. 3d 882, 888 (M.D. Tenn. 2019) (citation omitted). In those instances, the communications "may be narrowly limited consistent with the First Amendment." *Id*.

Ms. Kordie carries the burden of establishing the letter is "coercive, misleading, or improper," *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 23325, at *6 (N.D. Ohio Mar. 10, 2009), "in that it affects the proper functioning of the litigation." *Cox Nuclear Med. v. Gold Cup Coffee Servs.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003). "Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *Id.*

6

Ms. Kordie fails to sustain her burden that the letter is coercive or encourages putative members to refrain from joining the lawsuit. Her counsel's description of the letter as "blatantly coercive" does not make it so. (ECF No. 31, PageID 395.) Ms. Hobson's declaration to the effect that the letter made her worry about retaliation by Ohio Living if she became a member of the collective is disingenuous in light of the fact that she joined the collective. *Crosby*, 377 F. Supp. 3d at 890. Her hearsay testimony about the supposed thoughts and comments of other unidentified employees is inadmissible. (ECF No. 31-3, ¶ ¶ 19-21, 23.) Furthermore, more than 150 individuals have opted-in to the suit, making Ms. Hobson's contention that the letter was coercive "frivolous." (ECF Nos. 8, 12-13, 23, 32-34, 36, 38-39, 41-42); *Lewis v. Huntington Nat'l Bank*, No. C2-11-CV-0058, 2011 U.S. Dist. LEXIS 156175, at *14 (S.D. Ohio Oct. 24, 2011) (Marbley, J.) (argument that post-notice communications from defendant-employer to putative-employee collective members was coercive appeared "frivolous in light of the fact (of which the Court now takes judicial notice) that more than ninety plaintiffs have joined the litigation since the Court conditionally certified the class."). And, the Court "will not presume that [Ohio Living's] communication with employees was coercive based solely on a single Affidavit." *Snide v. Disc. Drug Mart, Inc.*, No. 1:11CV0244, 2011 U.S. Dist. LEXIS 133736, at *28 (N.D. Ohio Oct. 7, 2011).

"Even absent a finding of coercion, however, the court may remedy the effects of any communications between defendants and their employees if those communications were misleading." *Potts v. Nashville Limo & Transport, LLC*, Case

No. 3:14-cv-1412, 2016 WL 1622015, at *14 (M.D. Tenn. Apr. 19, 2016). Ms. Kordie argues the following portions of the letter are misleading: (1) addressing Ohio Living's remedial actions; (2) stating the employees need take no action; and (3) indicating the Notice is from Coffman Legal. As to the first, Ms. Kordie argues Ohio Living's statement that it will reimburse unpaid wages equates to an impermissible offer to settle without court approval. (ECF No. 31, at PageID 399-401); *Justus v. Nina's Health Care Servs.*, No. 2:21-cv-2270, 2021 U.S. Dist. LEXIS 187820, at *2 (S.D. Ohio Sep. 29, 2021) (Morrison, J.) (FLSA settlements require court approval). But offers to reimburse unpaid wages in this context do not equate to FLSA settlement offers. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 869 (S.D. Ohio 2011) (Marbley, J.)

Finding success are her latter two arguments. The letter states that the putative members are not required to take any action. (ECF No. 31-2, PageID 424). This is only partially true; while no action is necessary if a putative member elects not to join the suit, action is required to opt-in to the collective. This misstatement could confuse employees about whether they need to affirmatively act to join the collective. Second, the letter states Coffman Legal will send the Notice to the employees. This is incorrect. The Court issued the Notice. Putative collective members are more likely to respond to information from the Court than attorneys.

As to the final category of communications possibly justifying corrective action, Ms. Kordie does not contend that the letter undermines cooperation with or confidence in Coffman Legal.

8

Ms. Kordie fails to sustain her burden to produce a "clear record and specific findings" that necessitate the need for a protective order. *Gulf Oil*, 452 U.S. at 101. Instead, she establishes two non-egregious errors that a Corrective Notice can easily cure. *See In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 495-96 (S.D. Cal. 2008) (denying protective order but permitting corrective notice).

Accordingly, the Court **ORDERS** the parties to meet, confer and file a proposed Corrective Notice within ten (10) days of this Order. The proposal shall be short and limited to clarifying the two errors identified herein. Areas of contention shall be briefly described with authority provided. Ohio Living shall pay for the reasonable costs associated with the Corrective Notice. Because the Corrective Notice will be sent via mail and e-mail, and because a large number of individuals have already joined the action despite the letter's two errors, the Court determines that extending the opt-in period by thirty (30) days is sufficient.

### B. Remaining Requested Relief

While the Court finds the Motion partially meritorious, the Court does not find that Ohio Living acted in bad faith. Because that finding is necessary for a discretionary sanction of attorney's fees, Ms. Kordie's ask for same is **DENIED**. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002). The remainder of Ms. Kordie's requested relief is also **DENIED**.

### III. CONCLUSION

The Motion is **GRANTED** in part and **DENIED** in part. (ECF No. 31.)

9

The parties shall jointly file a proposed Corrective Notice within ten (10) days of this Opinion and Order.

The opt-in period will be extended by thirty (30) days from the date that the Corrective Notice is sent to putative collective members.

Ohio Living shall pay for the reasonable costs associated with the Corrective Notice.

No fees or sanctions are awarded. Any remaining requested relief is **DENIED**.

**IT IS SO ORDERED**.

                                                s/Sarah D. Morrison
                                              **SARAH D. MORRISON**
                                              **UNITED STATES DISTRICT JUDGE**